McKee & others, Respondents, vs. Brooks & Meegan, Appellants.

1. A privilege in a lease to the lessee of doing such *quarrying* on the demised premises as was necessary to carry on his business as a boat builder, *was held* to confer a property in the rock so quarried. (Judge Leonard dissenting.)

### *Appeal from St. Louis Circuit Court.*

This was a bill in chancery, filed in 1848, to compel an account for the value of rock, quarried upon premises demised by the complainants to the defendants.

The lease contained a clause to the effect that the lessees should have " the full and perfect right to do all such quarrying, grading, levelling, and make such alterations upon the demised premises as may by them be deemed requisite and proper for carrying on and managing their business." The cause was referred to a commissioner, who reported the following facts : That the defendants leased the premises described in the bill, fronting on the Mississippi river, for the purpose, as understood and agreed by both parties, of building and repairing boats, and that they took possession of the premises under the lease, and carried on said business thereon ; that the defendants quarried rock on the premises of the nett value of $410 over and above all expenses, which quarrying was requisite and proper to put the premises in good condition for their business ; but that part of the premises where the quarrying was done had not been used for that purpose, because materials for boat building had been too dear to justify the defendants in carrying on the business.

Upon these facts, the commissioner decided that the defendants were accountable to the complainants for the nett value of the rock quarried. Exceptions were filed to the commissioner's report, but they were overruled, and the report confirmed. The defendants appealed. The cause was submitted on written arguments.

McKee *v.* Brooks.

*T. B. Hudson*, for appellants. 1. The authority to quarry stone, contained in the lease to the appellants, gave them the right to sell the stone when quarried. (Taylor's Landlord and Tenant, 165, 170.) 2. The failure of the lessees to use the premises for a portion of the term for which they had been rented could not create a liability not contemplated by the terms of the demise. It could not be of the slightest importance to the lessors, whether the lessees used the premises or not, so long as they received the rent. Besides, the term had not expired, and the lessees were not bound to use the premises *immediately*, if at all.

*J. R. Shepley*, for respondents. 1. The privilege given to the defendants by the lease was a simple right to remove the rock, and conferred upon them no beneficial interest in the rock so removed. 2. Even if this were otherwise, yet the fact was found by the commissioner that the portion of the ground upon which the quarrying was done was never used for the purpose for which alone such quarrying was allowed.

SCOTT, Judge, delivered the opinion of the court.

In our opinion, the contract between the parties gave the rock quarried to the lessees, and they were under no obligations to account for it to their landlords. The lessees, by the contract, had a full and perfect right to do all such quarrying, grading, levelling, and make such alterations upon the demised premises, as might by them be deemed requisite and proper for carrying on and managing their business. It was found as a fact, that the quarrying done was requisite and proper to put the leased premises in good condition for the business of the lessees. We are at a loss to conceive a ground on which a contrary determination can stand. Had the rock quarried been thrown into the river—had the lessees permitted it to be taken out of their way by others as it was quarried, can it be perceived how they would have been liable for it to their landlords? That they did not do either of these things, but made a profit of it, cannot charge them with a liability. If a lessee takes a

McKee v. Brooks.

farm at a rent, with full liberty to clear an acre of timbered land, in addition to that already cleared, can he not cut down the timber and burn it up, or may he not cut it into cord wood and sell it at a profit? Would he, in either of these events, be liable to his landlord for the timber removed? The right to quarry in the one case, and the right to remove the timber in the other, without restriction or condition, would give to the lessee the liberty of disposing of the rock in the one case and of the wood in the other at his discretion, without any liability for an account to his landlord.

The fact that the lessees did not use the place cleared for their business, by reason of a change of circumstances which rendered it unprofitable, is their misfortune, and it would be hard to convert such misfortune into a source of increased responsibility, when otherwise it would not have existed. The quarrying was done in good faith under the terms of the agreement, and the fact that the place cleared by the lessees was not used by them, does not affect the landlords in any way, as they continued liable for the rent, notwithstanding they did not carry on their business.

Judge Ryland concurring, the decree will be reversed, and the bill dismissed.

LEONARD, Judge. I dissent from the opinion of the majority of the court in this case. In my judgment, the lessee acquired no property in the rock. His contract was for the use, and not for an absolute interest in any part of the leased property. The use to which the lot was to be applied, (boat building,) and the permission contained in the lease to the lessees, to "do all such quarrying, grading, levelling, and make such alterations upon the lot as they might deem requisite for carrying on and managing the business of the lessees upon the premises," did not change the character of the transaction, in reference to the stone necessarily taken up in putting the ground into a proper condition for the use intended. When the lease is of a mine or a stone quarry as such, the case is differ-

ent. There, the use given by the lease consists in the privilege of taking up and disposing of these parts of the leased property, and unless this were allowed, the lessee would acquire nothing by the contract. So, too, in the lease of forest land for cultivation, as a farm in a new country, where the wood is of no value and generally burned on the ground as worthless. There may be no difficulty in implying from the transaction permission to the lessee to dispose of the wood as he pleases. Here, however, the lease is of a lot in the vicinity of the city for a boat yard, and not of a stone quarry as such, and although the lessees may take up the stone, as far as may be necessary, to prepare the lot for this purpose, and have a right to use it during the term, and if it were worthless, might safely have thrown it into the river, yet it seems to me very difficult to imply from this clause in the lease a grant of the absolute property in it, if it were of any real substantial value as property, as it seems to have been, from the large profit the lessees made out of it, over and above the expense of quarrying.

Entertaining these views upon this point, which is the only one made in the case, I think the decree ought to be affirmed.